Rudnikas v. Nova Southeastern University. Mr. Sewell. Yes, Your Honor. Will you speak with us, please? Go ahead. No, just go ahead. Okay. All right. May it please the Court. Nathan Sewell on behalf of the appellant. Your Honor, we are here today on appellant's notice of appeal concerning an omnibus order. You might want to speak more directly in the microphone. Okay. Is that better? This is being recorded. Sure. So we're here today on an omnibus order denying several of appellant's motions at the district court. This court had entered an order on November 22nd concerning mootness. Yep. I can address that right now if you'd like me to. That'd be a good idea. Okay. So to start, you asked a couple questions, the first one being who carries the burden with respect to a subsequent action. The Supreme Court is pretty clear on this, that the movement carries that burden. It's the same heavy burden that would be relevant otherwise. I will provide you those sites. Well, I think we know whose burden it is and how voluntary cessation works. Okay. We had more specific questions. Sure. Okay? Okay. One point that I'd like to make is that there really wasn't a voluntary cessation here. What's occurred in this case is that appellant was effectively dismissed on July 15th, which is the date that he received the letter of dismissal. In that letter, it indicated that he was barred from the campus, effectively cutting him off from taking the criminal law exam. That's that question. At a later date, after he took the criminal law exam, I believe this would be August 6th, he received an amended letter from the university indicating that otherwise, basically amending the date so that it would appear as though he could have taken the criminal law exam, when, in fact, he could not have. He could not have gone to campus that day. But in any event, to address the court's question, if the court were to, say, restore the status quo or perhaps provide Pernickus the opportunity to retake the criminal law final exam, would he meet the thresholds to be in good academic standing? Would he be reinstated academically? Right. So the answer to that question should be yes. First of all, his GPA would be above the minimum threshold in any of the events proffered by this court. Of course, to be able to get to that issue, you have to be able to amend the complaint, right? Correct. And that's a big part of it. And the district court said, no, we're not allowing that, and so you'd have to show us that that was an abuse of discretion as well, would you not? Correct. Yes, Your Honor. Just a simple answer to the mootness question, that to the extent, at least on the Rehabilitation Act claim, you sought damages independent of any equitable relief, any injunctive relief, and that still is outstanding. Correct, Your Honor. That would mean that the case is still justiciable. Correct. The case is absolutely still justiciable. But aren't we here on appeal on the order on the preliminary injunction? Yes. So there's not an issue about the damages, the ADA damages on that preliminary injunction, is there? No. So the injunction that we're seeking is concerning the criminal law exam. Right. So the question is, is that moot? Not whether the whole case is moot, right? The question is whether that injunction is now moot, the order for an injunction. Or not the order, but the motion for the injunction. Concerning his ability to retake the criminal law exam specifically. Right. So, no, that wouldn't be moot. Nova's actions constitute irreparable harm. And these harms are continuing. And, yes, this is contingent on the amended complaint being granted, because the amended complaint brings in the criminal law issue to this court, or to the district court, which would allow the court to. So there's nothing for us really to consider in terms of the preliminary injunction effectively, unless we were to find the district court abused its discretion in denying you leave to amend the complaint, which he did because he said you sat on it too long, it took too much time, he gave you a deadline, it was pretty clear, and you missed it by a couple of months. Correct, Your Honor. So if that's not an abuse of discretion, we have to dismiss this, don't we? Well, Your Honor, if I might. The issue here is that at the time the plaintiff was pro se, and the issues, so when he sought to amend the scheduling order, that date had already passed, that was July 6th. His dismissal from the university was July 15th, which came after the. . . Subsequent events can make a case moot. Well, in any event, I suppose the appellee has the burden to show that. Are there any additional questions with respect to the mootness of the case? I don't believe so. Okay. I don't know if you have anything else you want to add. Yeah. So another point that we'd like to bring to this Court's attention is the fact that we could potentially, since the case is still alive, we could technically bring another 15D supplemental complaint to address those issues, or alternatively file a new action, and there's no issues of res judicata there, and then we have concerns about judicial economy, since a lot of these issues have been subject to discovery at this point. A lot of the issues contained in the proposed supplemental complaint and the verified complaint, those were subject to discovery in this case after they were filed. I suppose if I could reserve the rest of my time for rebuttal. Sure. You already had five, so you'll have three extra. Mr. Bean. Thank you. May it please the Court, Benjamin Bean on behalf of Nova Southeastern University. Is the appeal of the denial of the motion for preliminary injunction moot? Yes, it is, Your Honor. Why? Well, I'd like to address the questions, the specific questions, and the broader question of mootness that were set forth in the Court's November 22nd order. But before I jump right into directly those responses, I think it would assist the Court to go over some of the factual events that took place before and after the appellant filed his motion for preliminary injunction. The amended complaint, the operative complaint, was filed on April 28th, 2020. After that amended complaint was filed, multiple students, this was in June of 2020, filed complaints against the appellant for violations of the code. Specifically, the appellant had... I don't mean to interrupt, but I want to make sure that you're able to use your time in a way that helps to answer our questions. I think we're pretty familiar with the factual background, and so if you could focus on the answer to Chief Judge Pryor's question, which is what makes this appeal of the motion for preliminary, or the order on the motion for preliminary injunction moot. Absolutely. Absolutely. The Court set forth some very specific questions, so I'll answer those. With respect to the burden of establishing mootness, I agree with Appellant's Counsel. That burden is on the movant. NSU, my client being the movant, that would be our burden. Regardless of the burden and the scope of that burden, the facts of this case support denial or dismissal on mootness grounds. Hypothetically speaking, if the appellant's crim law exam was removed from his GPA, he would not have been dismissed. However, when we're talking about mootness, we're talking about subsequent events that remove jurisdiction from the Court on this appeal. And those subsequent events, they were not cessation of the conduct by Nova Southeastern. They were the actions of the appellant himself. What were the subsequent events that make this moot? Because it sounds like you've just told me that if you removed the F on the criminal exam, then he wouldn't have been dismissed. And if that's the case, then it seems like perhaps it's not moot, because we could order that you allow him to retake the criminal law exam, and then he could be reinstated. So the question is, is there something else that makes this moot? Yes, absolutely. So there were two events. On July 15th, the College of Law completed its investigation of this code violation and found that the appellant had violated the code. The appellant was provided an opportunity to appeal, which he did. During the pendency of that appeal, the appellant had the ability to continue to take classes. This was during the height of COVID. Everything was online. Right, and he was suspended for his role in this whole thing. He was suspended on August 7th. That's when he was officially suspended. During that time when he was appealing that decision, the finding by the law school that he had violated the code, he was still attending classes. And the appellant himself sent an email to the administration of the college and NSU's council, advising that the only reason he didn't take his criminal law exam was because he was doing other things related to his litigation, not because he wasn't allowed to take that exam. He knew he was allowed to, and he actually requested that it be kept open so that he would have more time to do that. That was his choice. Now, we could get into the merits of the motion for injunction, but I don't think that's necessary because when the plaintiff filed his motion for injunctive relief, he was not dismissed from the university at that time. He was suspended. He was suspended for a year, but part of that suspension was that it wasn't an automatic end to the suspension. He was required to petition and meet with the school in order to end the suspension, demonstrate that he could abide by the code, and return to classes. After the plaintiff, or after the appellant, filed his motion for injunction. I understand your argument. Your argument is he was given an opportunity to take final in criminal law. That's something that postdates this decision about the preliminary injunction. He decided not to do so. He decided not to take the final. He said he didn't have enough time, and he was dismissed as a result of that. That subsequent event makes whatever the dispute was about the motion for a preliminary injunction move. Is that your argument? Specifically, Your Honor, my argument is that the appellant was dismissed after he filed his motion for injunctive relief. His motion for injunctive relief could not possibly be. Based on a separate dispute, right? It's not tied up with the earlier. Is that your point? Correct. Correct. The motion for injunctive relief could not possibly have been directed at his dismissal. Now, it's confusing because the appellant refers to his suspension as his dismissal, and he refers to the date of his dismissal as being July 15th, but that's not accurate in the record. Is your point that the underlying lawsuit itself is not necessarily moved? That's a separate question. We're only talking about this appeal from a denial of a motion for preliminary injunction. Correct. The motion for preliminary injunction is the linchpin of this court's jurisdiction. All the other motions have been tagged along on a pendent appellate jurisdiction. If the motion for preliminary injunction is moot and dismissed, then the appeals of those other motions are dismissed as well. To address the court's last question, which was that if the dismissal, academic dismissal, were to be overturned, if the appellant were provided the opportunity to retake that exam, it wouldn't matter because the appellant was suspended as well for those two events. He's not a student enrolled in the university for reasons that are separate and independent of that controversy. Correct, Your Honor. Again, I may be mixing the merits of the motion for preliminary injunction with the mootness issue, but the appellant can't demonstrate any irreparable harm because it's already done. After the appellant filed the motion for preliminary injunction, he was dismissed. There's no motion that's pending to overturn that dismissal, only overturn the suspension. Subsequent events that have nothing to do with the underlying case have rendered this appeal moot. Now, addressing generally the other motions, and notwithstanding the fact that our position is that this whole appeal is moot and should be dismissed, the district court was well within its discretion in denying all of appellant's motions. I'm sorry, can I ask you one thing? I understood your friend on the other side of the aisle there to be saying that Mr. Rednikus could not have taken the criminal law exam when he was given the opportunity to retake it because he was still under suspension and wasn't allowed on campus. And so, that's why this isn't moot.  Well, that's simply not accurate based on the record. There was an evidentiary hearing in this matter. As I said, the exam was being taken in August of 2020. Nova Southeastern's campus was closed at that time. Everything was being done online. This was an online exam. The appellant sent an email the night that his exam was due. It was due at midnight on August 4th. On August 3rd at 12.56, he sent an email saying, open the exam, because this was a take-home online exam. Open it for me, because I haven't had an opportunity to even look at the exam, because I've been busy litigating with your attorneys. So, there's that point. But a second point is that the July 15th letter from NSU was simply a letter advising the appellant that the investigation had concluded that a hearing had been held without his presence because he refused to participate in the investigation and the hearing, and that he had been found in violation of the code and would be suspended, and then provided him with appellate rights, the right to appeal that decision, which he did, which is also in the record. During that time, the appellant is aware that he had the ability to continue to take classes. So, just to be clear, on top of the fact that there's, I guess there was a hearing, there was some factual finding, even setting that aside as a matter of fact, it wouldn't have been an issue that he wasn't allowed on campus because campus wasn't open, because everything was being done online. Correct. Because it was during COVID. Classes were online. Okay, thank you. And so, I want to address a point Chief Judge Pryor made as well, which is that there's multiple hurdles, I think, here that result in this case being moot. And the second is that the appeal needs to be dismissed if it wasn't an abuse of discretion to deny the motion to amend the scheduling order and to file the amended. Why don't you tell us about that? Sure. There were two standards that appellant needed to meet in order to show good cause for the filing of the amended complaint and the amendment of the scheduling order, and he failed to meet either of those standards. I think the standards are Rule 16D and Rule 15A. So, the appellant was required to demonstrate good cause, and he failed to do that. The appellant had been sending NSU's counsel emails for months, going back to March of 2020, that he was going to be filing a supplemental complaint to assert retaliation claims. He sent subsequent emails three months later in June, again, saying that he would be filing a Rule 15D supplemental complaint for breach of contract, fraudulent misrepresentation, retaliation before the July deadline. The appellant had the opportunity at an evidentiary hearing to demonstrate that good cause and provide facts to the district court as to why he waited almost six months from when he first brought the issue up of filing a amended or supplemental complaint in March to when he actually eventually did in September. And he failed to do that. So, the district court was in its discretion in denying that motion. The other issue, Your Honor, is Rule 15A. There's a slightly different standard under 15A to demonstrate good cause, and part of that standard is, or what the court may consider in determining that type of motion, is undue delay, bad faith, or dilatory motive. And the court had found that, I believe the district court found that the appellant had demonstrated bad faith in the conduct and the types of allegations that he had brought and the timeline he had brought them. I see that my time is up. If the panel does not have any additional questions, I'll conclude my presentation. Thank you, Mr. Bain. Mr. Sewell. So, I want to address a couple points. I'll start with his ability to take the criminal law exam and the effect of the July 15th letter indicating that he would be suspended. My counterpart had just indicated that all school-related activities were being held virtually due to the pandemic. The letter had indicated that he was barred from all school-related activities. That would include activities off campus that you're doing remotely inherent in that. So, in effect, that July 15th email did act as a dismissal. It acted to prohibit him from taking that exam. He may very well have attempted to, and I'm not trying to- That's not what he said at the time, though. I mean, didn't he say something to the effect of, I don't know how I could be ready for this exam when I'm doing all of this litigation or something to that effect? Correct, but the- So, that's not why he didn't take the exam. Well, with all due respect, when we're looking at these issues and we're considering pretext, we need to look at the decision-maker's state of mind at the time. But how does that show us what the decision-maker's state of mind is? Doesn't that- I mean, the decision-maker said, accommodated him by saying, you can retake the exam or you can take the exam on this day. And your client's response was, no thanks, I'm not ready to take it. Not, but you said, I can't do any kind of school-related activities. So, we have no basis to conclude that NOVA didn't really mean that it was going to allow your client to take the exam because he just didn't take it, right? Well, he didn't take it, but I believe there was a tremendous amount of confusion at the time. But what is the evidence in the record that shows that that wasn't a genuine offer by NOVA to allow him to take the exam at that rescheduled time? Well, the evidence that we are submitting to this court in the record is that July 15th email, that it did indicate that there was a- he did lack the inability to- But how does that show that NOVA wasn't being genuine when it offered the ability to take the exam in August? Well, they may very well have offered that. Are you suggesting that if he had taken the exam, that they would have then said, oh, too bad, we're not going to count it, even if he had aced it? Correct, but there's actually another- Well, what's the basis for that? The basis is the July 15th letter and his understanding of it past that point. If I can add an additional point to that, even assuming he keeps that F in that class, he's still entitled, per NOVA's policies, which are in the record, to retake that class. It's still an option that's afforded to him. It's- I regret not putting it in the brief. It was something that we discovered recently. But NOVA's policies and procedures, or student handbook, rather, indicates pretty clearly that the effect of an F grade in a criminal law class will result in the student being required to take that class again in the subsequent semester. Additionally, NOVA's handbook specifically states that a part-time student matriculating in the fall of 2019 will not have a criminal law grade in the summer semester counted against them towards their GPA if it takes place after their first two semesters or within their first two semesters or in the subsequent summer semester, so their first summer semester. So he still should have had the opportunity to retake that exam in any event. How many opportunities does NOVA have to give him to retake the exam? And is it up to him to decide whether today is a good day for taking it? It's not a matter of how many times they're supposed to offer to him. It's clear they're supposed to offer to him one additional time in the subsequent semester. But why is that clear? It's in their handbook. Except it says if he got an F, meaning that he took the class and did everything that was required to be done. The handbook says if he gets an F, he's required to retake the criminal law class. It also says that if he gets an F in that criminal law class in that summer semester as a part-time student, that that grade will not be counted against him in that semester for academic standing purposes. And that's not in the record, is it? It is. Where in the record would it be? So this would be an attachment to docket entry 5051. This would be page 513 as well as 527. And that's the student handbook. And it indicates that very clearly. There's an additional point, too, and this is also made clear in the student handbook. He hasn't lost the ability pursuant to that handbook to reapply for admission. That is still there. It doesn't say he needs to apply on a certain date. It just says that he needs to apply in a subsequent year. And it doesn't say it has to be that subsequent year. He has the ability. He could technically apply now. And so let me just make sure I understand. Your argument is that this isn't moot because he could reapply and then he would want to have the opportunity to retake the exam. Is that right? Correct, Your Honor. Okay, but he hasn't reapplied yet, and at the moment he's not a student. So there's no basis for him to retake the exam at this time, is there? Why isn't it moot at this time? Well, Your Honor, NOVA has proffered that he's not eligible. He's not an eligible student despite the handbook indicating that he would be. In their affirmative defenses in their statement of the case, NOVA indicates that very clearly. Give me a moment. I'll pull that up. Okay. So this is the record site. So this would be docket entry 107, page 5 of 8, in which the appellee indicates, Okay. I think we have your case, Mr. Sewell. We're going to move to our last case this morning. This is Sky Harp, Take 9.